# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES HELLUMS,

        Petitioner,

vs.                                     NO. CIV 96-63 MV/LCS

JOE WILLIAMS,

        Respondent.

## MAGISTRATE JUDGE'S SECOND AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### Introduction

THIS MATTER cones before the Court on Petitioner James Hellums' ("Hellums") Petition for a writ of *habeas corpus,* filed under 28 U.S.C. Sec. 2254, which was referred to this Magistrate Judge pursuant to 28 U.S.C. Sec. 636. The Court, having considered the Petition, the memoranda submitted by the parties, the record and the applicable law, proposes finding that the Petition is well-taken in part and recommends that it be granted in part.

On February 23, 1999 the Court filed Proposed Findings and recommended disposition (PFD), in which it recommended dismissing the Petition without prejudice on the grounds that one of Hellum's claims had not been exhausted. On March 9, 1999 Hellums filed objections to the PFD, contending that the claim had been exhausted, or in the alternative, because the case had been pending for three years, the Court should reach the merits of the Petition. The Court found the objection as to the length that the case had been pending well-taken and on April 1, 1999, entered a PFD addressing the merits of the Petition. On April 15, 1999 the Petitioner objected to the Amended PFD,

claiming, *inter alia,* that the Magistrate Judge applied an erroneous legal standard in analyzing Petitioner's claims that erroneously admitted evidence and testimony deprived him of a fair trial.

On June 2, 1999 the Court directed the parties to re-brief the legal standard issue raised in the Petitioner's objections.[1] On June 7, 1999, the Petitioner asked the Court for leave to file his brief until thirty days after the Tenth Circuit issued an opinion in *United States v. Charley*. In *Charley*, the Tenth Circuit considered the precise legal issue at issue in the present case, in a nearly identical factual context. The briefs submitted were helpful, informative and a credit to counsel.

## Proposed Findings

On August 16, 1991, Hellums was convicted on eight counts of first-degree criminal sexual penetration of a minor and 2 counts of criminal sexual contact with a minor in violation of N.M.Stat.Ann. Sec. 30-9-11 (A) and 13(A) respectively. The victim was his stepdaughter. On November 13, 1991 he was sentenced to sixty years' imprisonment. After exhausting his state appeals and state *habeas corpus* procedures, he filed this Petition, claiming that his right to due process was violated because the evidence presented at his trial was insufficient to sustain his conviction; that his right to a fair trial was violated by the introduction of expert testimony which bolstered the credibility of the victim; that his right to a fair trial was violated by the admission into evidence of pornographic photographs and sexually oriented books, that his right to a speedy trial was violated[2], and that he received ineffective assistance of counsel.

---

[1] The Court finds no merit in any of Petitioner's objections other than the legal "harmless error" standard. Accordingly, this second amended PFD is identical to the first amended PFD in all respects except for its harmless error analysis.

[2] The court combines both Hellums' pre-indictment and post-indictment delay claims under this general heading.

**Sufficiency of the evidence**

A federal court in a *habeas corpus* proceeding reviews a sufficiency of the evidence claim *de novo*, to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. *Kelly v. Roberts*, 988 F.2d 802, 807-08 (10th Cir. 1993). In assessing the claim, the court does not weigh conflicting evidence or consider the credibility of witnesses. *Id.*

Hellums contends that the victim's testimony was wholly incredible, because her statements whether photos were taken, when the abuse began, what abuse did or did not take place and how often it took place were so loaded with contradictions that they rendered each of her stories unbelievable. Because this contention requires the Court to weigh conflicting evidence and consider the victim's credibility, the Court recommends that it be denied.

Hellums next contends that the victim's testimony was too ambiguous to support a conviction on the charges as set out in the indictment. Hellums, his wife and his stepdaughter lived together in an apartment from October 25, 1985 until November 30, 1986, and in a house from December 1, 1986 until November 30, 1989. The charges included, *inter alia,* claims that he committed vaginal penetration and anal penetration during the time they lived in the apartment, and during the time they lived in the house. His stepdaughter testified that he penetrated her vagina and her anus both while they lived in the house and while they lived in the apartment. Hellums contends that it is "irrevocably unclear" whether she claimed that he committed each type of penetration in both places or just one type in one place and another type in the other. However, this Court proposes finding her testimony unambiguous on this point, and therefore recommends that it be denied.

Hellums next contends that to prove the criminal sexual contact counts, the state relied entirely on his statements. Since in those statements he admitted the contact but denied having the intent to arouse or gratify sexual desire, or to intrude upon his stepdaughter's bodily integrity or personal safety, he contends that his statements do not provide sufficient evidence of *mens rea* to sustain his conviction. However, the jury was free to disbelieve his testimony that he did not have the necessary intent. Moreover, that the prosecutor chose to emphasize only his statements during closing argument does not mean that no other evidence of intent was admitted. For example, Hellums' wife's testimony that he used to masturbate while looking out the window at young female students playing during recess, and Hellums' possession of pornographic photographs involving prepubescent girls, constitute evidence from which a rational trier of fact could choose not to credit Hellums' testimony about his lack of intent. The Court accordingly proposes finding that, viewed in the light most favorable to the prosecution, the evidence presented was sufficient to persuade a rational fact finder beyond a reasonable doubt that Hellums had the requisite intent. As a result, the Court recommends that this part of Hellums' Petition be denied as to this point.

**Fair trial**

A trial court's errors in admitting evidence will not constitute grounds for granting a writ of *habeas corpus* unless the errors are so serious as to actually prejudice the defendants' rights. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). Accordingly, errors which do not require granting a writ are considered "harmless errors". *Chapman v. California*, 386 U.S. 18, 22 (1967). Hellums contends that the trial court's allowing a psychologist to opine that his stepdaughter's accustions of sexual abuse were credible, and its admitting as evidence pornographic material which he had in his possession, prejudiced his right to a fair trial. Respondent contends that these were harmless errors.

4

An expert witness may give opinion testimony if the expert's specialized knowledge would help the trier of fact understand the evidence or decide a fact in issue, but such opinion testimony may not usurp the exclusive function of the jury, which is to determine credibility. *U.S. v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981). Thus, while a child sex abuse expert may testify about a child's ability to separate truth from fantasy, opine whether the medical evidence is consistent with the child's story, and compare the patterns in the child's testimony with the patterns of stories of child abuse victims in general, *see U.S. v. Azure*, 801 F.2d 336, 340 (8th Cir. 1981), it is error to allow an expert to testify that a child's testimony is truthful. *U.S. v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993).

In the present case, Hellums contends that two expert witnesses, Zussman and Barker, repeatedly assessed his stepdaughter's credibility for the jury, explaining in detail their reasons for believing her allegations, and asserting they found no reason to disbelieve her. The State disputes his allegation as to Zussman, but concedes it as to Barker. However, the state contends that the erroneous admission of Barker's testimony does not require granting the Petition.

The State contends, and the New Mexico Court of Appeals found, that it was significant that trial counsel did not object to Barker's testimony. In such circumstances, the State law standard is whether Hellums' guilt is so doubtful that it would shock the conscience to allow the conviction to stand. *State v. Clark*, 772 P.2d 322, 331 (Ct. App. NM 1989). This Court agrees with the Court of Appeals that Hellums' claim does not meet this standard; however, in federal *habeas corpus* cases the standard of review, regardless of whether counsel objected to the evidence, is whether the erroneously admitted evidence had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In *United States v. Charley,* 189 F.3d 1251, 1265 (10th Cir. 1999), the Tenth Circuit held that a Court should compare the strength of the properly admitted testimony and evidence with the amount of erroneously admitted testimony and evidence. After making this comparison, if the Court has grave doubt that the trial was not substantially affected by the erroneously admitted testimony, then the error was not harmless. *Id.* The Court will accordingly perform this comparison.

A. Properly admitted testimony

Hellums' stepdaughter testified that on numerous occasions from when she was four years old until she was seven years old, Hellums sexually molested her. Tr. of 4-1-91 video trial deposition, pp. 18-19. She was eight years old at the time she testified. She had previously told several people about what had occurred, and there was some variation in those descriptions. compare Tr. of 4-1-91 pp. 18-19 with Tr. Vol. I. p.59 & 106, Vol. II p. 206, and Vol. III pp. 27 & 45. The descriptions were more realistic than an eight year old child would be expected to construct solely from her imagination. Tr. Vol. I p.132. After being removed from the house and placed in state custody, she once telephoned her guardian *ad litem* because she said he had lied about her stepfather, although when later asked whether the lie was related to the molestation, she said that it was not. Vol. III pp. 47-48. She identified herself and her father in two photographs which depicted a young girl performing oral sex on an adult male. Tr. of 4-1-91 video trial deposition p.20.

The Court admitted several photographs of Hellums' stepdaughter. The young girl in the photographs performing oral sex on the adult male strongly resembles Hellums' stepdaughter, but the photograph is not clear enough to be conclusive as to her identity. The Court admitted several photos of Hellums and his wife engaging in oral and anal sex, photographs of male and female

6

genitalia, and photographs of prepubescent female genitalia. Pl. ex. 1A&B, 5-8, 9A-C, 10A-F and 11-13.

Hellums' wife testified that the girl in the photographs was not her daughter, and that she had seen the photographs before she married him. Vol. II p.81, 116- 119. She also testified that her daughter told her early on that she had been abused, and that when she confronted him about it, Hellums admitted having touched her on the knees on one or two occasions, and said he would kill her if she told anyone. *Id.* at 63-64. She testified that once she learned about the abuse, she did not allow Hellums to be alone with his stepdaughter for more than a few minutes at a time. *Id.* at 109-11 and 128-31. She testified that for the next three years she asked her daughter several times if Hellums had molested her, and her daughter always said he had not. *Id*. at 111-112. Three years later, when she heard from her mother that her daughter had said she was being sexually molested, Hellums' wife again confronted him. This time, Hellums said initially that he had only touched her a couple of times, but that he was guilty, that he was sorry, and that he would do anything to fix the situation. *Id.* at 73-74. The next morning, he admitted that he had sexually molested his stepdaughter. Id. at 76. She testified that after his stepdaughter was removed from the house, Hellums used to masturbate while looking through his window at young schoolgirls playing. *Id.* at 83.

A pediatrician testified that Hellums' stepdaughter's hymeneal opening was within the upper range of normal limits, and that there was some redness around her vaginal opening, both findings consistent with mild sexual activity, but also consistent with non-sexual activity. He also testified that most abused children do not show any physical signs of sexual abuse. Vol. I pp. 92-100.

7

Another pediatrician testified that Hellums' wife told her that Hellums had admitted touching his stepdaughter, and said that he wanted to get help. *Id.* at 126. She also testified that the stepdaughter told her that she had been sexually molested and had described what had happened. *Id.* at 131-32.

A Detective testified that he interviewed the stepdaughter, who told him that Hellums had sexually molested her. *Id.* at 28-30. He also testified that he interviewed Hellums. *Id.* at 31. The taped interview was admitted in which Hellums admitted touching his stepdaughter on her inner thighs on two occasions. Pl. ex. 3.

One of the psychologists, Zussman, testified that he interviewed the stepdaughter and her mother and that the stepdaughter told him that she had been sexually molested.. He testified that in his opinion she had not been coached, Vol. III pp. 45-47, and that in his opinion, her behavior was consistent with that observed in victims of sexual abuse. *Id.* at 66. He also stated that at the time of the interviews, Hellums' wife believed that the stepdaughter had not been abused. *Id*. at 48-49.

Hellums denied abusing his stepdaughter. He testified that any time he ever touched her around her genital area it was accidental, Tr. Vol. IV pp. 9 & 43, and that he promised not to be alone with her simply in order to protect himself and to maintain family harmony. *Id.* at 50. He testified that the girl in the photographs was not his stepdaughter, *id.* at 37, and that he never masturbated while looking out the window at young schoolgirls. *Id.* at 54. He felt that the allegations were the result of his in-laws attempting to break up his marriage because they thought he was too old for his wife. Vol. III pp. 209-10.

B. Erroneously admitted testimony and evidence

The second psychologist, Barker, testified that in her opinion Hellums' stepdaughter was credible based upon her behavior, statements, the accuracy and vividness of her descriptions and her world view, and because her statements were corroborated by her parents' statements and the police department investigation. Vol. II p. 182; Vol. III p. 14. The prosecution referred to Barker's "opinions" in its closing argument. Vol. V pp. 115-116.

The trial judge admitted over objection three books found at Hellums' house. The subject of the books was deviant sexual behavior, including incest, spanking and bestiality. Pl. ex. 11-13.[3]

The Court believes that there was sufficient evidence to support the jury's verdict without the erroneously admitted testimony and evidence. However, when I consider the importance of the stepdaughter's credibility in a case such as this where there are no eyewitness and there are inconclusive physical findings, when I consider that she was only eight years old at the time she testified and that her testimony was self-contradictory on some collateral points, when I consider that her mother testified that her daughter repeatedly denied that any abuse occurred for three years after telling her mother of the initial two incidents and when I consider that the jury deliberated for nearly eight hours before returning its verdict, it seems likely that the psychologists's testimony that the stepdaughter's allegations of abuse were credible was influential. When I consider that the prosecution in its closing argument referred, albeit obliquely, to the psychologist's testimony that the

---

[3] Respondent contends that it was not error for the trial court to admit the books, as they were relevant to impeach Hellums' credibility, since during the investigation he stated that he did not have any pornography in his house. While the Court agrees that the books are relevant on the issue of Hellums' general credibility, it would be an abuse of discretion on the part of the trial judge to admit them if their relevance was substantially outweighed by their unfairly prejudicial effect. See Fed.R.Evid 403. "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from the its judgment as to his guilt or innocence of the crime charged." *United States v. Roberts,* 88 F.3d 872, 880 (10th Cir. 1996). The extreme nature of the books' subject matter would likely have just such an effect.

9

stepdaughter was credible, Tr. Vol. IV, pp. 115-16, I have grave doubt that the psychologist's testimony did not have a substantial effect on the jury's verdict as to the eight counts of criminal sexual penetration. Accordingly, I recommend that the Petition be granted on the basis that, as to the eight criminal sexual penetration counts, the admission of this testimony was not harmless error.

Petitioner contends that the extreme odiousness of the subject matter of the books on sexual deviance caused them to also have a substantial and injurious effect on the jury's verdict, or at least, that the cumulative effect of their admission and the admission of the psychologist's testimony was not harmless error. *Compare United States v. Harvey,* 991 F. 2d 981, 997 (2d. Cir. 1993). However, because I propose finding that the admission of the psychologist's testimony alone was an error of constitutional significance, I need not reach this issue.

As to the two criminal sexual contact counts, because Hellums admitted making the contact but denied having the requisite intent, it was his credibility, not his stepdaughter's, which was in issue. Accordingly, the erroneously admitted testimony and the erroneously admitted books did not substantially and injuriously influenced the jury's verdict on these two counts, and I propose finding that their admission was harmless error as to them. I therefore recommend that the Petition be denied as to the two counts of criminal sexual contact.

**Speedy trial**

Hellums contends that he was denied his right to a speedy trial because he was not indicted until ten months after his arrest, and then was not tried until ten months after his indictment. In order to determine whether the right to a speedy has been violated, a court considers four factors: the length of the delay, the reasons for the delay, whether the accused asserted his right to a speedy trial and whether the delay prejudiced the defense. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

10

In the present case, the delay was four months beyond the usual six month speedy trial requirement of State law. The State's reason for the delay was the need to redo the indictment. The accused did not assert his right to a speedy trial; in fact, during discovery, counsel for the defense stated on the record that he himself intended to seek an extension of the State's six month speedy trial requirement. Further, Hellums does not contend that the four-month delay beyond the six-month speedy trial rule prejudiced his ability to present his defense. On balance, this Court proposes finding that Hellums' right to a speedy trial was not violated, and accordingly recommends that this part of his Petition be denied.

**Effective assistance of counsel**

Hellums contends that he was denied his right to effective assistance of counsel. In order to establish such a claim, Hellums must establish that his counsel's performance was outside the wide range of professionally competent assistance, and second, he must establish a reasonable probability that, had the attorney's conduct been adequate, the result would have been different. *Strickland v. Washington,* 466 U.S. 668, 692-94 (1984).

Hellums first contends that his counsel failed to investigate evidence that the pictures admitted into evidence were taken on film which was no longer manufactured at the time the alleged conduct occurred. Since the relevant question was when the film was exposed, not when it was manufactured, counsel's failure to investigate this point was not objectively unreasonable.

Hellums next contends that counsel failed to object to the expert testimony about his stepdaughter's credibility. As to the two criminal sexual conduct counts, the testimony was immaterial; having admitted touching her genitals but denied having the requisite intent, it was his credibility, not hers, which was in issue. Accordingly, there is not a reasonable probability that counsel's objecting to that evidence would have changed the outcome of that part of the case.

As to the criminal sexual penetration counts, by contrast, Hellums' stepdaughter's credibility was of considerable importance. However, since there was enough evidence in the record to convict Hellums absent the expert testimony, the Court is unable to say that there is a reasonable probability that counsel's objecting to that evidence would have changed the outcome of the case.[4]

Hellums next contends that his counsel removed the earphones which allowed them to communicate during the videotaped trial deposition of his stepdaughter, and that counsel refused to ask certain questions he had requested. Counsel's actions appeared to be based on tactical considerations; the delicacy of cross-examining a young child about sexual abuse allegations required his concentration not be interrupted during the questioning (counsel did communicate with Hellums during breaks), and his decision to rely on inconsistencies in her statements rather than seeking to get her to corroborate parts of Hellum's testimony fall within the wide range on competent professional assistance. *See generally, U.S. v. Rodriguez-Ramirez,* 777 F.2d 454, 458 (9th Cir. 1985). Accordingly, the Court recommends that Hellums' ineffective assistance of counsel claims in his Petition be denied.

---

[4] This standard is different from the harmless error standard discussed on page 5. The Court in its first amended PFD used this standard as part of its harmless error analysis, and believes that such consistency makes sense. However, because the Court is bound on the issue by the *Charley* opinion, it applies the standard enunciated therein.

**Recommended Disposition**

I recommend that the Petition be granted as to the eight counts of criminal sexual contact on the grounds that Hellums was denied a fair trial because the admission of the psychiatrist's testimony on the credibility of the victim was not harmless error. Accordingly, I recommend that a new trial on these counts be held within a reasonable time. I recommend that the Petition be denied on all other grounds.

Within ten days after a party receives a copy of the Magistrate Judge's Proposed Findings and Recommended Disposition that party may, pursuant to 28 U.S.C. Sec. 636(b)(1), file written objections. A party must file its objections within ten days with the Clerk of the United States District Court for the District of New Mexico if it desires review; if they are not timely filed, neither the District Court nor the Court of Appeals will review the Magistrate Judge's Proposed Findings and Recommended Disposition.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**