IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES HELLUMS,

    Petitioner,

vs.                                                                                   No. CIV 96-63 MV/LCS

JOE WILLIAMS, Warden; ATTORNEY
GENERAL FOR THE STATE OF NEW MEXICO,

    Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Petitioner's Motion for Clarification of this Court's Order Entered January 18, 2000 (the "Order"), and for a Permanent Injunction Barring Petitioner's Retrial **[Doc. No. 102]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, ruled at the hearing that Petitioner's motion was well-taken and would be **GRANTED**, and that Petitioner is entitled to (1) clarification that, at the time when the Court set a retrial deadline pursuant to the Order, this Court intended that Respondents be afforded five months from the date of the Tenth Circuit's decision on Respondents' appeal of the Order in which to commence a retrial of Petitioner, and that, if Respondents did not commence the retrial within that five-month period, Respondents would be permanently barred from ever retrying Petitioner; (2) a permanent injunction enjoining Respondents from any retrial of Petitioner on the eight criminal sexual penetration counts in the indictment in Bernalillo County District Court No. CR 91-01417 ("Petitioner's State Case"), and (3) an order requiring Respondents to dismiss the charges in Petitioner's State Case with prejudice and to immediately release Petitioner from custody. The Court now sets forth the bases for its prior ruling in this Memorandum Opinion and Order.

BACKGROUND

On January 18, 2000, this Court entered the Order granting Petitioner a writ of habeas corpus. The Order provided: "The state shall either retry Hellums within a reasonable time on the eight counts of criminal sexual penetration, or it shall release him from custody." The Court denied Petitioner's motion to amend the Order to set a deadline by which the state would be required to retry Petitioner, leaving it for the state trial judge to determine what would be "a reasonable time." Respondents filed a notice of appeal of the Order to the Tenth Circuit. Thereafter, Respondents filed a motion to stay the Order pending appeal, and Petitioner filed a motion for release from custody. The Court held a hearing on the parties' motions on December 15, 2000. At the hearing, this Court denied Respondents' motions and granted Petitioner's motion, releasing him to the third party custody of the Dismas Charities Halfway House under special conditions. Also during the hearing, the Court defined what constituted a "reasonable time" for the state to retry Petitioner as "within five months of the decision by the Court of Appeals."

The Tenth Circuit affirmed the Order on August 8, 2001. The Tenth Circuit specifically held that this Court had orally ordered the state to retry Petitioner within five months of the Tenth Circuit's decision. As Respondents admit in their opposition papers, this Court thus limited the time for the state to retry Petitioner to five months beginning August 8, 2001. Respondents have never sought an extension of this deadline.

On September 4, 2001, Petitioner filed a motion for immediate release from the halfway house. Respondents did not respond to the motion. Moreover, Respondents never notified Mr. Gonzales, Petitioner's counsel in this federal action, or Petitioner whether the state intended to retry Petitioner. Rather, Respondents claim that the state "began its effort to retry Petitioner" on

2

September 21, 2001, when the investigator at the District Attorney's Office "initiated telephonic contact" with Petitioner at the halfway house, and that this call "was intended to verify Petitioner's address for subsequent mailing." Respondents further claim that, during this call, Petitioner stated that he was represented by Mr. Gonzales. Respondents' Answer in Opposition to Petitioner's Motion at 2.

Under Rule LR-CV 7.5(b) of the Rules of the United States District Court for the District of New Mexico, this Court determined that Respondents' failure to respond to Petitioner's motion constituted consent to the requested relief. Moreover, the Court found that Petitioner had complied with all of the strict conditions of release that had been imposed upon him while he was at the halfway house. Accordingly, the Court determined that Petitioner deserved to be released into the community and, on September 24, 2001, ordered that Petitioner be released from the halfway house ("Release Order"). The Court imposed upon Petitioner no conditions of release.

Petitioner was released from the halfway house that same day. After Petitioner was released from the halfway house, Mr. Gonzales advised Petitioner that Petitioner had no obligation to keep Mr. Gonzales informed of his whereabouts, and that Petitioner was free to conduct his life in any lawful way he chose. A week after his release, Petitioner established a home in Belen, New Mexico, where he resided until his arrest on September 27, 2002.

On October 16, 2001, the state filed a motion to compel selection of counsel in Petitioner's State Case. The state sent copies of the motion to Petitioner at the halfway house address, where he no longer lived, and to Mr. Gonzales, who did not have Petitioner's new contact information. The motion was set for hearing on November 7, 2001. The state did not inform Petitioner or Mr. Gonzales of this setting. Petitioner did not attend the hearing. At the hearing, the state district court

3

issued a bench warrant for Petitioner's arrest based on his failure to appear at the hearing. Petitioner was arrested on September 27, 2002, and has been detained in state custody since that date.

Retrial was scheduled for February 3, 2003. Petitioner filed the instant motion on January 7, 2003 **[Doc. No. 102]**. Respondents submitted their response in opposition on January 17, 2003 **[Doc. No. 103]**, and Petitioner provided the Court with a reply on January 22, 2003 **[Doc. No. 105]**. The Court held a hearing on January 29, 2003. At the completion of the hearing, the Court granted Petitioner's motion.

## DISCUSSION

Rule 60(a) of the Federal Rules of Civil Procedure provides in relevant part:

**Rule 60. Relief from Judgment or Order**

> **(a) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any part and after such notice, if any, as the court orders.

In *Burton v. Johnson*, 975 F.2d 690 (10th Cir. 1992), *cert. denied*, 507 U.S. 1043 (1993), the Tenth Circuit held that "a district court may . . . invoke Rule 60(a) to resolve an ambiguity in its original order to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented." *Id.* at 694.

The petitioner in *Burton* had been granted a writ of habeas corpus, which stated that she was to "be released unless a new trial is commenced within 90 days." After expiration of the ninety-day period without a retrial, the petitioner asked for a final order granting the writ and barring her retrial by the state, contending that because the state failed to retry her within the ninety-day period or obtain a stay of that period, the state was barred forever from retrying her. The state argued that the

district court lacked authority to permanently discharge the petitioner, and that authorizing such a remedy would be an abuse of discretion.

The Tenth Circuit rejected this argument, holding that:

> As this circuit has recognized, a federal court possesses power to grant *any form of relief necessary* to satisfy the requirement of justice. A district court, therefore, has authority to permanently discharge a successful petitioner in a habeas corpus case where it deems such a remedy appropriate.

*Id.* at 693 (citation omitted) (emphasis in original). In addition, the Tenth Circuit found that the state was "precluded from obtaining substantive review of whether permanent discharge in the case at hand constitute[d] an abuse of the District Court's discretion" because neither party had contested the remedy in the first appeal. *Id.* The Tenth Circuit then found that the district court's original order was "ambiguous as to the intended effect of the expiration of the ninety-day period." *Id.* at 694. Accordingly, the Tenth Circuit remanded the case to the district court for interpretation and clarification of the original order pursuant to Rule 60(a). The district court thereafter issued a final order and writ of habeas corpus, clarifying its original intent that the state be afforded ninety-days in which to commence a retrial of petitioner, and that if the state did not commence the retrial within that period, then the state would be permanently barred from ever retrying petitioner.

The Tenth Circuit applied its holding in *Burton* to *Capps v. Sullivan*, 13 F.3d 350 (10th Cir. 1993), where the district court issued an order granting habeas corpus which instructed the respondent warden to release the petitioner from confinement "unless a new trial is held within 90 days." The petitioner was not retried, nor was a stay of the order timely requested. The respondent appealed the decision. After expiration of the ninety-day period, the district court released the petitioner from custody, subject to conditions imposed pending the outcome of the appeal. The Tenth

5

Circuit affirmed. Following the Tenth Circuit's decision, the petitioner filed a motion for issuance of a writ of habeas corpus, seeking to vacate the conviction, lift the conditions imposed on his release, and bar the state from retrying him on the underlying charges. The district court granted the writ of habeas corpus, and the respondent appealed that part of the decision barring the new trial, arguing that the district court lacked the power to bar the retrial and, if it did have the power, it abused its discretion.

Citing *Burton*, the Tenth Circuit held: "In this circuit, barring a new trial is a permissible form of judgment." 13 F.3d at 352. Accordingly, the respondent's "contention that the district court lacked the authority to bar the retrial is meritless; the district court had the power to grant any form of relief necessary, including permanent discharge." *Id.*

The Tenth Circuit then explained that the proceedings in *Capps* were very similar to those in *Burton*. The writs at issue were nearly identical, and thus, "by the law of this circuit," the writ in *Capps* was "ambiguous." *Id.* at 353. Moreover, as "neither party contested the effect of the expiration of the ninety-day period in the first appeal" the Tenth Circuit "decline[d] to review the permanent discharge of Mr. Capps." *Id.* The Tenth Circuit remanded the case to the district court to give effect to its original understanding of the order granting the petitioner relief. On remand, the district court issued a final order and writ of habeas corpus, which barred the state from any retrial of the petitioner on the charges underlying the state conviction.

In light of the precedent established in *Burton* and *Capps*, this Court has the authority to bar Respondents' retrial of Petitioner. Moreover, Respondents did not contest the effect of the expiration of the five-month period in their appeal, and thus are foreclosed from arguing that permanent discharge would be an abuse of this Court's discretion. Accordingly, under Rule 60(a), the Court

6

clarifies that: (a) during the December 15, 2000 hearing, this Court defined, for purposes of the Order, what constituted a "reasonable time" for the state to retry Petitioner; (b) the Court gave the state five months from the date of the Tenth Circuit's decision on Respondents' appeal of the Order to retry Petitioner; and (c) the Court intended to bar Respondents from ever retrying Petitioner if they failed to meet the five-month deadline.

Respondents' time to retry Petitioner thus was limited to five months beginning August 8, 2001, the date on which the Tenth Circuit affirmed the Order. The five-month period beginning August 8, 2001 was more than ample time for Respondents to retry Petitioner, especially considering that they were told on December 15, 2001 that they would have five months from the time the Court of Appeals made its decision. Respondents never asked this Court for an extension of the deadline, and have provided no explanation for their failure to do so. Respondents did not retry Petitioner within the five month period beginning August 8, 2001 and, accordingly, failed to comply with the Order.

The Court finds no merit to Respondents' argument that Petitioner's actions were unreasonable and obstructionist and that the delay in the retrial of Petitioner's case therefore should be excused. At no time while Petitioner was residing at the halfway house did Respondents inform Petitioner whether they intended to retry him, or request that he provide change of address information once he left the halfway house. Moreover, Petitioner left the halfway house only after making a motion for release to which the State did not respond and which this Court granted without imposing any conditions. As there were no conditions in the Release Order, Petitioner was under no obligation to Respondents to provide a forwarding address or otherwise. Accordingly, Petitioner's alleged failure to provide Respondents with contact information does not constitute a violation of any

7

responsibility or requirement imposed upon him and his actions were neither unreasonable nor obstructive. Respondent's actions thus cannot excuse Respondents' failure to retry Petitioner before the expiration of the five-month period.

To the contrary, this Court finds Respondents' conduct to have been unreasonable. Respondents have presented no evidence that they made any effort, other than one telephone call to the halfway house, to find Petitioner. Indeed, after Petitioner left the halfway house, Respondents made no effort at all to determine where he was residing. Respondents did not send an investigator to search for him or to perform a utilities check or an internet search for Petitioner's name to see if he was within the state of New Mexico. If Respondents had made such reasonable efforts, it would not have been difficult to locate Petitioner, as he was listed in the telephone book in Belen and was registered with the utility companies, using his actual name. Thus, fault for Respondents' failure to retry Petitioner in a timely manner rests with Respondents alone.

Moreover, it was neither reasonable nor prudent for Respondents to refuse to ask this Court to impose upon Petitioner conditions of release or even to participate in Petitioner's motion before this Court, and then ask the state court for a bench warrant for Petitioner's arrest. Once Respondents determined that they could not locate Petitioner, they could have sought from this Court an extension of the five-month deadline. Instead, Respondents asked the state court for a bench warrant for Petitioner's arrest based on his failure to appear at the state hearing on Respondents' motion to compel selection of counsel. Respondents could have avoided the need for the bench warrant by participating in the motion in the instant action and requesting certain conditions of release, including requiring change of address notification or reporting to state authorities.

The Release Order was entered on September 24, 2001, several weeks before Respondents, on October 16, 2001, sent to Petitioner at the halfway house copies of the motion to compel selection of counsel. Accordingly, Respondents knew or should have known that Petitioner would not receive notice of the hearing on the motion and thus would fail to appear at the hearing. Respondents should not have resorted to the use of a state bench warrant to arrest Petitioner for his failure to appear at a hearing for which he had no notice.

Finally, Respondents' attempt to distinguish the instant case from *Burton* and *Capps* fails. Contrary to Respondents' assertion, the petitioner in each of those cases was not in custody but had been released from prison at the time the retrial deadline had expired. Moreover, there is no mention in either of those cases that a petitioner must establish prejudice, and this Court has found no cases which impose such a requirement on a petitioner. Thus, *Burton* and *Capps* are controlling here, and are not distinguishable on the facts.

## CONCLUSION

Respondents did not retry Petitioner within the five-month period beginning August 8, 2001. Respondents thus failed to comply with the Court's Order. As Respondents have not provided any valid reason for their failure to comply with the Order, they are barred from retrying Petitioner.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Clarification of the Order and for a Permanent Injunction Barring Petitioner's Retrial **[Doc. No. 102]** is **GRANTED**.

**IT IS THEREFORE FURTHER ORDERED** that Petitioner is entitled to (1) clarification that, at the time when the Court set a retrial deadline pursuant to the Order, this Court intended that Respondents be afforded five months from the date of the Tenth Circuit's decision on Respondents' appeal of the Order in which to commence a retrial of Petitioner, and that, if Respondents did not

9

commence the retrial within that five-month period, Respondents would be permanently barred from ever retrying Petitioner; (2) a permanent injunction enjoining Respondents from any retrial of Petitioner on the eight criminal sexual penetration counts in Petitioner's State Case, and (3) an order requiring Respondents to dismiss the charges Petitioner's State Case with prejudice and to immediately release Petitioner from custody.

Dated this 14th day of April, 2003.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Petitioner
Benjamin Gonzales

Attorney for Respondents
Max Shepard